UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALAN OSTERHOUDT,

     Applicant,

v.                                    CASE NO. 8:18-cv-2438-SDM-TGW

SECRETARY, Department of Corrections,

     Respondent.

_____/

**ORDER**

     Osterhoudt, through retained counsel, applies (Doc. 1) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his conviction for manslaughter, for which Osterhoudt is imprisoned for thirty years.  Numerous exhibits ("Respondent's Exhibit") support the response.  (Doc. 5)  The application alleges a single ground, which the respondent correctly argues lacks merit.

I.      **BACKGROUND**[1]

     On February 25, 2012, Osterhoudt and his wife drank alcoholic beverages throughout the day and began arguing in the afternoon.  Later that evening a friend of the Osterhoudts called their residence and spoke with Osterhoudt and his wife, both of whom the friend believed were "fine," that is, the Osterboudts were no

_____

[1] This summary of the facts derives from Osterhoudt's brief on direct appeal.

longer arguing.  Osterhoudt testified that after talking with the friend, he gave the

telephone to his wife and went into his separate bedroom.  Osterhoudt claimed that

he "dozed-off" while watching television and was awakened by his dog barking and,

after checking on the dog, he heard a "bump" or "thump" in his adjoining bathroom.

Because he was concerned there was an intruder, Osterhoudt retrieved his gun and

went into the bathroom and, as he entered, he was "startled" and discharged the gun.

At that point he realized that the person who startled him was his wife, that she was

struck by the bullet, and that she was on the floor no longer breathing.

Osterhoudt called the emergency line for the Hernando County Sheriff's

Office and reported that he had just shot his wife inside their residence.  One deputy

sheriff arrived at the residence, placed Osterhoudt in handcuffs, and removed

Osterhoudt from the residence.  A second deputy found the victim lying on the

bathroom floor.  The second deputy also saw a revolver in the bedroom.  Paramedics

arrived and pronounced the victim dead, and later the medical examiner determined

that the victim died from a gunshot wound to the head.  Lastly, foreign DNA was

recovered from beneath the victim's fingernails but a forensics specialist was unable

to match the DNA to Osterhoudt.

Osterhoudt was charged with murder in the second degree but a jury found

him guilty of the lesser-included offense of manslaughter.  The pending application

asserts a single ground — the trial court erred in denying both Osterhoudt's

motion for mistrial and his motion for a new trial based on a detective's answer

on cross-examination that, under Osterhoudt's interpretation, was a comment on

Osterhoudt's right to remain silent.  The respondent admits both that the application

is timely and that the ground is fully exhausted.  (Doc. 5 at 5 and 10)

## II.   <u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim —
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light
> > of the evidence presented in the State court
> > proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court. Under § 2254(d)(1), the writ may issue
> only if one of the following two conditions is satisfied — the
> state court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined
> by the Supreme Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal law,
> as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may

grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of ' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States

Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

Osterhoudt's conviction and sentence were summarily affirmed on direct appeal.[2] As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Osterhoudt bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Osterhoudt's federal application presents the same ground that he raised on direct appeal.

## III.   MERITS

Osterhoudt's application alleges no claim of ineffective assistance of counsel. The only claim alleged is that the trial court erred in denying both a motion for

---

[2] The Fifth District Court of Appeal summarily affirmed the conviction and sentence as without merit but issued a written opinion affirming the trial court's imposing several fines. (Respondent's Exhibit M) The Florida Supreme Court reversed and ordered the trial court to follow proper procedure before imposing a fine. (Respondent's Exhibit Y)

mistrial and a motion for new trial, each based on a detective's answer on cross-examination that, under Osterhoudt's interpretation, was a comment on Osterhoudt's right to remain silent. The district court summarily denied Osterhoudt's claim as "without merit" (Respondent's Exhibit M at 1) and Florida's supreme court "declined to address" the issue. (Respondent's Exhibit Y at 1 n.1) Consequently, the last state court to address the merits of the issue was the trial court, which orally denied both motions. As *Wilson*, 138 S. Ct. at 1192, instructs, this court must "look through" the unexplained appellate court decisions to review the trial court's "reasoning" for denying the motions.

Osterhoudt alleges that the state violated his right to remain silent when on cross-examination Detective Jill Morrell testified as follows about the investigation of the shooting (Respondent's Exhibit B at 748–49):

> Q. The purpose of them going in the house is to determine — to clear the house, make sure it's safe and check on anyone to see if they're alive or dead, or give any medical aid, right?
>
> A. Correct.
>
> Q. Okay. They had done that part?
>
> A. Yes.
>
> Q. And then they're instructed to immediately leave that house and sit and wait for you to get a search warrant?
>
> A. They already had the information from the 911 tape and having — going through the house and searching it, the drawer in the master bedroom was open and the firearm was in plain sight where he said he had left it.
>
> Q. So, pretty much the 911 tape dictated what charges would occur later on?

> A. Obviously, we would have liked to have gotten a statement, but at that point we had not been able to get a statement from Alan so we had to go (indiscernible).

Defense counsel moved for a mistrial, interpreting the last statement as a comment on Osterhoudt's right to remain silent.  The trial judge denied Osterhoudt's motion for a mistrial with the following reasoning (Respondent's Exhibit B at 756–57):

> The issue is the question and answer that was given and the extent to which the Defendant's Constitutional right to remain silent has been injected into the trial as an issue. Okay. I think counsel would concede . . . that the response was limited and it was in response to the question. It was not unresponsive, it was responsive to the question. The detective indicated that they would have liked to have gotten a statement but at that point they were not able to. She clearly said at that point. It doesn't suggest that he never gave a statement or refused to give a statement.
>
> You have gone to great lengths pointing out that she was at the house and he was someplace else, there's nothing from which the jury could come to any reasonable conclusion that your client had an opportunity to give a statement and refused. That's what the Constitution protects and that has not been impinged at this point. There may be a hint, but there is certainly nothing from which the jury could draw the reasonable conclusion that he invoked his right to remain silent.

Before closing arguments the following morning, the trial judge denied Osterhoudt's renewed motion for a mistrial with the following reasoning  (Respondent's Exhibit B at 1003–04):

> [A]ny possible prejudicial effect on the defendant has been ameliorated by the fact that the defendant took the stand and testified. He was cross-examined by the State based on the comments he made on the 911 call, there was no reference or suggestion to any failure to make any other statement. I paid careful attention to that.

Frankly, I might have reconsidered my ruling had there been any question in that direction in terms of his encounter with Detective Williamson, which is presumably where the invocation occurred, but I . . . will hold to my earlier finding that I do not believe that the question and the answer by Detective Morrell in any way clearly referenced an invocation of any Constitutional right.

She . . . qualified her statement in time based on the . . . point of the question that was being asked, because the suggestion was clearly being made that she caused the defendant to be arrested simply because there was information on a 911 call and presumably a fatality and a gun was discovered. And in attempting to explain her position, which she said . . . would have liked to have a statement at that point, and that was [the] end of it. There was no further discussion of it, there was no overt or clear indication that the defendant was given another opportunity to make a statement and invoked his constitutional right not to do so.

At sentencing, Osterhoudt moved for a new trial partly based on the above testimony by Detective Morrell. The trial judge denied the motion with the following reasoning (Respondent's Exhibit E at 1153–55):

[A]s I found at the time that the detective made the comment, there was nothing else from which the jury could place her comment into context. Her response to a series of questions from you I found to be responsive because the tone and point of the questions that were being asked of Detective Morrell was that she was going to arrest Mr. Osterhoudt simply based on what she saw at the scene and a 911 tape. And in direct response to that line of questions and that challenge — and it was a challenge, I think the record would fairly reflect that you were challenging her judgment in that regard — she said though I would have liked to have had his statement.

Now, the jury was aware at that point that another officer had been assigned to take his statement. There was no suggestion to the jury ever made that Mr. Osterhoudt declined to make a statement to that officer. And it was entirely possible, in fact, just as likely possible that the jury could conclude from what they heard at that point is that the detective hadn't spoken to her co-worker yet. Because you . . . quickly pointed out she was

> going to get a warrant even while he was being assigned to go talk to your client.
>
> There was no further mention of your client's encounter or conversation with the other detective assigned to speak to him, other than a bleak reference that Detective Williamson was assigned that task. There was no discussion, no testimony about what occurred. In fact, there was no reference to it at all.
>
> During the cross-examination of your client, the only questions I heard relative to any statements he made were statements he made to the 911 operator. In the State's closing argument, the only comments or arguments that were made were relevant to what he told the 911 operator. No further suggestion or . . . intimation was made to the jury at all about anything that went on during his attempt at an interview by Detective Williamson.
>
> My ruling will remain the same. In that regard, the motion is denied.

The above portions from the state court record show that the trial judge both afforded Osterhoudt a full opportunity to argue his motions for a mistrial and for a new trial and thoroughly explained his reasoning for denying the motions. The trial judge was in the best position to determine whether the jurors were possibly negatively influenced by Detective Morrell's testimony, which, as *Arizona v. Washington*, 434 U.S. 497, 515–16 (1978), explains, is why a federal court should defer to a state trial judge:

> Defense counsel aired improper and highly prejudicial evidence before the jury, the possible impact of which the trial judge was in the best position to assess. The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately and accorded careful consideration to respondent's interest in having the trial concluded in a single

> proceeding. [The trial judge] exercised "sound discretion" in handling the sensitive problem of possible juror bias created by the improper comment of defense counsel . . . .

*See also Gavin v. Comm'r, Alabama Dep't of Corr.*, 40 F.4th 1247, 1263 (11th Cir. 2022) ("[A] prisoner must show that the state court's ruling 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Harrington*, 562 U.S. at 103).

Osterhoudt is entitled to no relief because the trial judge's reasoning was most assuredly not unreasonable. *See Wilson*, 138 S. Ct. at 1192 ("[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion . . . a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."); *Brown v. Davenport*, 142 S. Ct. 1510, 1530 (2022) ("[T]his Court has repeatedly explained that, when it comes to AEDPA, 'the more general the [federal] rule[,] . . . the more leeway [state] courts have in reaching outcomes in case-by-case determinations' before their decisions can be fairly labeled unreasonable.") (quoting *Renico*, 559 U.S. at 776) (internal brackets original).  Consequently, Osterhoudt fails to meet his burden of showing that the state court decision is either (1) contrary to or an unreasonable application of controlling constitutional law or (2) based on an unreasonable determination of fact.

Lastly, Osterhoudt contends (Doc. 1 at 16–17) that, in determining whether Detective Morrell's testimony violated his right to remain silent, the applicable standard is whether "[a]ny comment that is 'fairly susceptible' to interpretation as a

comment on the defendant's right to remain silent will be treated as such." *Mack v. State*, 58 So. 3d 354, 356 (1st DCA 2011).  In his reply (Doc. 9 at 2 n.1) Osterhoudt further argues the "fairly susceptible" standard as discussed in *Parker v. State*, 124 So. 3d 1023, 1025 (2nd DCA 2013).  However, the "fairly susceptible" standard is inapplicable in this federal action because a federal court does not enforce state law. *Mack* is based on the "very liberal rule" adopted in Florida under the due process clause of the Florida Constitution, Article I, Section 9, as *Mack* itself states, and the sentence immediately preceding Osterhoudt's quotation of *Parker* (which sentence Osterhoudt omitted) qualifies the "fairly susceptible" standard as based on "[t]he due process clause of the Florida Constitution . . . ."  *See Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("[I]t is not a federal court's role to examine the propriety of a state court's determination of state law."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law" and federal courts must abide by their rulings on matters of state law).  Moreover, both the district court and the supreme court rejected Osterhoudt's claim as meritless and unworthy of discussion.

## IV.  CONCLUSION

Osterhoudt fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact.  As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Osterhoudt's application for the writ of habeas corpus (Doc. 1) is **DENIED**.

The clerk must enter a judgment against Osterhoudt and **CLOSE** this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Osterhoudt is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Osterhoudt must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that

reasonable jurists would debate either the merits of the grounds or the procedural issues, Osterhoudt is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Osterhoudt must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on November 30, 2022.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE